IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION


KENYATTA CORNELOUS                                                          PETITIONER

v.                            NO. 2:17-cv-00139 BSM/PSH

GENE BEASLEY, Warden, FCC-Forrest City                                      RESPONDENT


FINDINGS AND RECOMMENDATION

INSTRUCTIONS

The following proposed Findings and Recommendation have been sent to Chief United States District Judge Brian S. Miller. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## DISPOSITION

On May 9, 2009, petitioner Kenyatta Cornelous ("Cornelous") was arrested and detained by Pinellas County, Florida, authorities for the offenses charged in Florida v. Cornelous, CRC 09-09625CFANO. See Docket Entry 1 at CM/ECF 19; Docket Entry 7, Declaration of James D. Crook at 1.[1] He was released on bond on August 14, 2009. See Docket Entry 7, Declaration of James D. Crook at 1.

On November 18, 2009, Cornelous was indicted in the United States District Court for the Southern District of Iowa in United States v. Cornelous, 3:09-cr-00110. See Docket Entry 7, Declaration of James D. Crook at 2; Docket Entry 7, Declaration of James D. Crook, Attachment 2. The federal offenses were unrelated to the state offenses. See Docket Entry 7, Declaration of James D. Crook at 2.

On November 22, 2009, Cornelous was arrested and detained a second time by Pinellas County, Florida, authorities. See Docket Entry 7, Declaration of James D. Crook at 2.[2] The United States Marshals Service ("USMS") lodged a detainer against him the following day. See Docket Entry 7, Declaration of James D. Crook at 2.

On March 16, 2010, the USMS acquired temporary custody of Cornelous pursuant to a writ of habeas corpus ad prosequendum. See Docket Entry 7, Declaration of James D. Crook at 2. The USMS acquired custody of Cornelous so that he could answer the offenses charged in the federal case.

---

[1] James D. Crook is a Supervisory Attorney with the Federal Bureau of Prisons and has access to the records the BOP maintains in the ordinary course of business.

[2] Cornelous maintains that he was arrested by Pinellas County, Florida, authorities a second time as a result of his indictment in the federal case. See Docket Entry 1 at CM/ECF 4, 7. In an unrebutted declaration, though, James D. Crook represents that Cornelous was arrested by Pinellas County, Florida, authorities a second time "in relation to" the offenses charged in the state case. See Docket Entry 7, Declaration of James D. Crook at 2.

2

On September 1, 2011, Cornelous was sentenced in the federal case to a 320 month term of imprisonment. See Docket Entry 7, Declaration of James D. Crook at 2. The judgment and commitment order was silent "regarding any relationship with the forthcoming action" in Pinellas County, Florida. See Docket Entry 7, Declaration of James D. Crook at 2. He was returned to the custody of Pinellas County, Florida, authorities, and the judgment in the federal case was filed as a detainer. See Docket Entry 7, Declaration of James D. Crook at 3.

On March 1, 2013, Cornelous was sentenced in the state case to 19.25 years imprisonment. See Docket Entry 7, Declaration of James D. Crook at 3. The counts were ordered to run "concurrently and for [the] state sentence to run concurrent to ... [his] federal sentence. In addition, the judge ordered ... Cornelous [to] receive 1,293 days credit toward his state term for [the] time he was in custody prior to [the] imposition of his state sentence." See Docket Entry 7, Declaration of James D. Crook at 3.

On April 2, 2013, Cornelous was transferred from the custody of Pinellas County, Florida, authorities to the Florida Department of Corrections ("FDC"). See Docket Entry 7, Declaration of James D. Crook at 3. He had anticipated, though, that he would be transferred to the custody of the Federal Bureau of Prisons ("BOP") as "[t]he state judge [had] made oral stipulations in the plea agreement that [Cornelous] be turned over to the [BOP] and the state prosecutor agreed and signed the agreement." See Docket Entry 1 at CM/ECF 7.

On May 13, 2015, a Pinellas County, Florida, judge granted Cornelous' motion for post-conviction relief in the state case but did so on a limited basis. In the order, the judge ordered the following:

> On March 1, 2013, [Cornelous] pleaded guilty to two counts of sexual battery (counts one and four), three counts of human trafficking (counts two, five, and eight), three counts of deriving proceeds from prostitution (counts three, six, and nine), and false imprisonment (count seven) … Under the plea agreement, the Court sentenced [him] to 19.25 years in prison on all counts, concurrent with each other and with any prior federal conviction. …
>
> [Cornelous'] motion for post-conviction relief requests that he be resentenced to time served because his negotiated plea agreement called for his sentence to be served in federal prison concurrent with a federal sentence, which has not occurred. … The State has conceded that [he] is entitled to post-conviction relief but argues that the Court should provide a different remedy. At the status check, the State argued that it wanted to receive the benefit of the bargain it made with [Cornelous]. The State requested that the Court allow [him] to withdraw his plea. [He] could then proceed to federal prison, at which point the State would file a writ of habeas corpus ad prosequendum to return him to this Court. [He] could then plead guilty and receive the same sentence he is currently serving. …
>
> Accordingly, based on the State's representations, the Court will grant [Cornelous'] motion to the extent that the Court will allow him an opportunity to withdraw his plea so that the State may proceed in the procedure it has outlined. A motion for post-conviction relief is the proper vehicle to withdraw a defendant's plea more than thirty days after sentencing. … Should the State be unable to transport [Cornelous] to federal custody through the procedure discussed at the status check, [he] may again move to be resentenced to time served. …

See Docket Entry 1 at CM/ECF 19-20.

Pinellas County, Florida, authorities were unable to achieve the result they had hoped to accomplish, i.e., move Cornelous to federal custody. For that reason, on July 31, 2015, a Pinellas County, Florida, judge entered an amended judgment and sentence in the state case which provided, in part, that Cornelous was sentenced to 2,185 days in the custody of the FDC with credit for 2,185 days served. See Docket Entry 7, Declaration of James D. Crook at 3. The effect of the amended judgment and sentence was that it resulted in Cornelous' immediate release from the custody of the FDC.

4

On August 6, 2015, Cornelous was released from the custody of the FDC. See Docket Entry 7, Declaration of James D. Crook at 4. He was received into federal custody the following day and began serving his sentence in the federal case. See Docket Entry 7, Declaration of James D. Crook at 4. A Sentence Monitoring Computation Form reflects that the federal sentence was deemed to have commenced on August 7, 2015. See Docket Entry 7, Declaration of James D. Crook, Attachment 10 at 2. The document also reflects that he was given credit on his sentence for two days he spent in prior custody that had not been credited to any other sentence, i.e., he was credited for the period from December 22, 2006, through December 23, 2006. See Docket Entry 7, Declaration of James D. Crook, Attachment 10 at 2.[3]

Cornelous thereafter filed a request for a nunc pro tunc retroactive designation pursuant to Barden v. Keohane, 921 F.2d 476 (3rd Cir. 1990), with the BOP. See Docket Entry 7, Declaration of James D. Crook at 4. In an unrebutted declaration, James D. Crook represents that the following then occurred, all of which the undersigned accepts as true:

> On April 14, 2016, the [BOP] contacted the Sentencing Court [in the federal case] in response to ... Cornelous' request ... A retroactive designation is made only after the review of all relevant factors under Title 18 U.S.C. 3621(b). Ordinarily, the [BOP] allows the Court 60 days to respond to [a] letter prior to reviewing the other four factors in the five factor review under 18 U.S.C. 3621(b). ...

---

[3] In James D. Crook's unrebutted declaration, he represents that the period from December 22, 2006, through December 23, 2006, was the period Cornelous spent in state custody after the date of the federal offense "which was not applied to any other sentence." See Docket Entry 7, Declaration of James D. Crook at 4. An attachment to Crook's declaration reflects that Cornelous was arrested by Hillsborough County, Florida, authorities on December 22, 2006, for what appears to have been one or more motor vehicle offenses. See Docket Entry 7, Declaration of James D. Crook, Attachment 11 at 1. Cornelous was detained but released the following day. The undersigned accepts James D. Crook's representation that Cornelous was never given credit on any sentence—state or federal—for the two day period.

> On July 27, 2016, the [BOP] completed the Factors Under 18 U.S.C. 3621(b) Worksheet to determine if a retroactive concurrent (nunc pro tunc) designation would be appropriate. In ... Cornelous' case, [it was] determined the relevant factors under Title 18 U.S.C. 3621(b) [were] (1), (2), (3), and (4). Under factor (2), his federal offense is Conspiracy to Manufacture, Distribute, and Possess with Intent to Distribute ... Cocaine Base and ... Cocaine. Total Term = 320 months. State Offenses: Sexual Battery, Human Trafficking, Deriving Proceeds from Prostitution, and False Imprisonment – Total Term = 19.25 years (later reduced to 2,185 days). The Federal and State Charges are not related on the instance offense conduct. Under factor (3), his record indicated he has a criminal history. Excluding the aforementioned state and federal convictions, the following convictions are listed with the Pre-Sentence Investigative Report: Theft; Burglary; Receiving Stolen Auto Parts; Attempted Carrying a Concealed Firearm; Drug Abuse; Felonious Assault; Possession of Cocaine; Possession of Marijuana; and No Drivers License. The [BOP] Disciplinary Record has been reviewed with the following conduct listed: None. State Disciplinary Information has been requested but has not been received. Under factor (4), the Sentencing Court was contacted to obtain an opinion regarding the granting of a retroactive designation on April 14, 2016. However, no response was received from the court. It was noted [that] the Federal Judge did comment on the issue in his September 12, 2016 Order ... In light of the preceding information, [the BOP] determined that a nunc pro tunc designation [was] not appropriate in his case. ... Cornelous received written notification of this decision. ...

See Docket Entry 7, Declaration of James D. Crook at 4-5.

Cornelous appealed the denial of his request for a nunc pro tunc retroactive designation by pursuing the administrative remedies afforded him by the BOP. See Docket Entry 1 at CM/ECF 33-36, 40-41. It is not clear how many steps he took in the administrative process, but it is clear that the denial of his request for a nunc pro tunc retroactive designation was never overturned or otherwise altered.

On August 31, 2016, or before the denial of the request for a nunc pro tunc retroactive designation, Cornelous filed a motion for clarification of his sentence in the federal case. United States District Judge John A. Jarvey denied the motion on September 12, 2016, and gave the following reasons for doing so:

> … In [Cornelous' motion for clarification of sentence], [he] contends that he was facing charges in Florida state court at the same time he pled guilty in Iowa to federal drug charges. He contends that the court failed to specify whether its drug sentence should run concurrently or consecutively with any future state sentence. He contends that the court should specify that the court intended its sentence to run concurrent with any future state court sentence.
>
> The Court has no authority to declare a sentence to be concurrent or consecutive to any sentence that may occur subsequent to the imposition of the defendant's federal sentence. For that reason, the motion must be denied. In addition, the human trafficking and other sex offenses that the defendant was convicted of in Florida are completely unrelated to the drug charges pending here in Iowa. The Court would certainly have run its drug charges consecutively to the state court sentence, if it could.

See Docket Entry 1 at CM/ECF 37.

On August 18, 2017, Cornelous began the case at bar by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. 2241. He alleged in the petition that he was arrested and detained by Pinellas County, Florida, authorities on November 22, 2009, not in relation to the offenses charged in the state case but as a result of his indictment in the Southern District of Iowa. Although he remained in state custody until August of 2015, he alleged that it was primarily because of the indictment in the federal case. Cornelous asked that his sentence in the federal case be credited for the time he spent in state custody from November 22, 2009, i.e., the day he was arrested a second time by Pinellas County, Florida, authorities, through March 1, 2013, i.e., the day he was sentenced in Pinellas County, Florida, in CRC 09-09625CFANO. He also asked that he be given "prison time credit"/good time credits for the period from March 1, 2013, through August 31, 2015, i.e., the day he was "finally relinquished to the [BOP]." See Docket Entry 1 at CM/ECF 5.

Respondent Gene Beasley ("Beasley") filed a response to the petition and asked that it be dismissed. Beasley maintained that the time sought by Cornelous has already been provided to him by the State of Florida and cannot, under federal law, also be provided by the BOP. Beasley additionally maintained that Cornelous failed to completely exhaust his administrative remedies before filing the petition at bar.

Cornelous filed a reply to the response. In the reply, he again maintained that he is entitled to credit on his federal sentence for the period from November 22, 2009, through March 1, 2013, because the BOP must award credit on a federal sentence for the time a defendant spends in non-federal custody when the underlying basis for the custody is a federal warrant. He also again maintained that he be given "prison time credit"/good time credits for the period from March 1, 2013, through August 31, 2015.

The undersigned began reviewing the record and determined that a supplemental response from Beasley would be beneficial. Beasley was asked to explain whether Cornelous was entitled to Willis credits on his federal sentence and to more fully plead and prove Cornelous' failure to exhaust.[4]

Beasley filed a supplemental response. In it, Beasley maintained that Cornelous was not entitled to Willis credits because he was not serving concurrent state and federal sentences. Beasley also alleged that Cornelous did not completely exhaust his administrative remedies because he did not appeal the denial of his request for a nunc pro tunc retroactive designation to the Office of General Counsel.

---

[4] Willis credits are a "double counting" exception adopted by the BOP after the Fifth Circuit's decision in Willis v. United States, 438 F.2d 923 (5th Cir.1971). See Richardson v. Outlaw, 2011 WL 671997 (E.D.Ark. 2011), aff'd, 427 F.Appx. 544 (8th Cir. 2011). See also Davis v. Schultz, 2010 WL 5392649 (D.N.J.2010) (Willis credits are for "time spent in non-federal pre-sentence custody during which the inmate is denied bail because of a federal detainer"); Azure v. Gallegos, 97 Fed. Appx. 240 (10th Cir.2004) ("The court's concern [in Willis] was that the defendant initially spent time in state custody subject to a federal detainer, and he should get federal credit for that time.").

Cornelous was accorded an opportunity to file a supplemental reply to the assertions made by Beasley in his supplemental response. Cornelous failed to do so, and the time for doing so has now passed.

The undersigned begins an analysis of Cornelous' petition by briefly addressing Beasley's assertion that Cornelous failed to exhaust his administrative remedies. The exhaustion question focuses on the procedure Cornelous used prior to arriving in federal court. See State of Missouri v. Bowen, 813 F.2d 864 (8th Cir. 1987). Before filing his petition, he was required to have completely exhausted his administrative remedies. See United States v. Chappel, 208 F.3d 1069 (8th Cir. 2000).

Beasley maintains that Cornelous did not completely exhaust his administrative remedies because he did not appeal the denial of his request for a nunc pro tunc retroactive designation to the Office of General Counsel. Beasley supports his assertion by submitting what he characterizes as a "SENTRY, Admin-Rem Generalized Retrieval." See Docket Entry 11, Attachment B. Although the document may be as Beasley represents, i.e., proof that Cornelous did not appeal the denial of his request for a nunc pro tunc retroactive designation to the Office of General Counsel, it is difficult to glean that fact from the document, and there is no affidavit testimony or other evidence explaining the information contained in the document. For this reason, rather than struggle with the correct interpretation of the document, the undersigned will deny the motion to dismiss on the basis of failure to exhaust, and will address the merits of Cornelous' claim.

The BOP initially possesses the exclusive authority to compute "sentence credit awards after sentencing." See Rodriguez v. Lamar, 60 F.3d 745, 747 (11th Cir. 1995).

The BOP's construction of a statute is due deference, but the judiciary retains "the final authority on matters of constitutionality and statutory construction. See Id.

18 U.S.C. 3585(b) provides that a defendant shall be given credit on his sentence for any time he spent in official detention prior to the date the sentence commences "as a result of the offense for which the sentence was imposed" or "as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed." 18 U.S.C. 3585(b) contains an important qualification: it provides that the defendant shall be given credit on his sentence for any time he spent in official detention prior to the date the sentence commences "that has not been credited against another sentence."

The question is whether Cornelous is entitled to credit on his federal sentence for the period from November 22, 2009, through March 1, 2013, i.e., for the period from the day of his second arrest by Pinellas County, Florida, authorities, through the day of his sentencing in the state case. Having reviewed the record, the undersigned is persuaded that the BOP has calculated his sentence in a reasonable and appropriate manner and in accordance with federal law.

The unrebutted declaration of James D. Crook establishes, and the undersigned finds, that Cornelous received credit on his sentence in the state case for the period from "November 22, 2009, (date re-arrested by state), through August 6, 2015 (date released from state sentence)." See Docket Entry 7, Declaration of James D. Crook at 6. Because Cornelous received credit on his state sentence for that period, 18 U.S.C. 3585(b) precludes crediting his federal sentence for the same period. See United States v. McIntyre, 508 F.2d 403 (8th Cir.), cert. denied, 422 U.S. 1010 (1975) (defendant not

10

entitled to credit on federal sentence after receiving credit on state sentence for same period).

The undersigned initially had some question whether Cornelous was entitled to Willis credits because it is possible, notwithstanding James D. Crook's unrebutted declaration to the contrary, that Cornelous was arrested and detained beginning on November 22, 2009, pursuant to a federal warrant. However, even assuming that he was arrested and detained on November 22, 2009, pursuant to a warrant from the Southern District of Iowa, he is not entitled to Willis credits because he did not serve concurrent state and federal sentences. See Myers v. Outlaw, 2011 WL 873343 (E.D.Ark. 2011) (Willis credit available if, inter alia, state and federal sentences were concurrent). It is true that the Pinellas County, Florida, judge ordered Cornelous' state sentence to run concurrent with his federal sentence, but "a state court's determination that a sentence should run concurrently with a federal sentence is not binding on federal authorities." See United States v. Galceran, 2008 WL 4104696 at 2 (D.Minn. 2008). Moreover, Judge Jarvey observed the following in the order denying Cornelous' motion for clarification of his sentence: "the human trafficking and other sex offenses [Cornelous] was convicted of in Florida are completely unrelated to the drug charges pending ... in Iowa. The Court would certainly have run its drug charges consecutively to the state court sentence, if it could."

A second question is whether Cornelous is entitled to "prison time credit"/good time credits for the period from March 1, 2013, through August 31, 2015, i.e., for the period from the day of his sentencing in the state case through the day he was "finally relinquished to the [BOP]." Having reviewed the record, the undersigned finds that the

BOP has calculated his sentence in a reasonable and appropriate manner and in accordance with federal law.

"The date on which a federal sentence commences is controlled by statute." See United States v. Hayes, 535 F.3d 907, 909 (8th Cir. 2008). 18 U.S.C. 3585(a) provides that a federal sentence commences on "the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." The BOP is vested with the authority for determining when a federal sentence commences. See Id.

Here, the BOP has determined that Cornelous' federal sentence commenced on August 7, 2015, and the BOP could reasonably make such a determination. August 7, 2015, was the day he was received into federal custody following his release from the custody of the FDC. It is true that federal authorities had custody of him from March 16, 2010, until sometime after the federal sentence was imposed. They had custody of him, though, pursuant to a writ of habeas corpus ad prosequendum, and he was therefore "on loan" from state authorities. See United States v. Cole, 416 F.3d 894 (8th Cir. 2005). The writ did not alter his custody status; the writ merely changed the location of his custody. See Munz v. Michael, 28 F.3d 795 (8th Cir. 1994).

18 U.S.C. 3634(b) provides that a prisoner may obtain credit on his federal sentence for satisfactory behavior. The credit is awarded for "up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term …" Cornelous' federal sentence did not commenced until August 7, 2015. His term of imprisonment did not begin prior to that date. The undersigned knows of no support for the proposition that a prisoner can obtain "prison time credit"/good

time credit for a sentence prior to its commencement, and the BOP could reasonably conclude that he is not entitled to such credits prior to August 7, 2015.

For the foregoing reasons, the undersigned finds that Cornelous is not entitled to the relief he seeks. Although his state and federal sentences were not administered as he was initially led to believe, the federal courts can offer no recourse. The order of the Pinellas County, Florida, judge is simply not binding as to how Cornelous' state and federal sentences would be served. See Hendrix v. Norris, 81 F.3d 805 (8th Cir. 1996) (discretion of federal sentencing court cannot be limited by state court's judgment). Accordingly, Cornelous' petition should be dismissed, all requested relief should be denied, and judgment should be entered for Beasley.

DATED this 26th day of February, 2018.

_____
UNITED STATES MAGISTRATE JUDGE